**THE MARTIN LAW FIRM**
Casey Martin, 227463
113 Court Street, Ste. 208
Hanford, CA 93230
Telephone: 559-530-3144
Fax: 559-530-3648
E-Mail: caseymartinlaw@gmail.com

**CHRISTINE J. LEVIN, ATTORNEY AT LAW**
**CHRISTINE J. LEVIN** #192181
4459 N. Teilman Ave.
Fresno, California 93705
Telephone: (559) 221-2604
Facsimile: (559) 221-2660
E-Mail: cjlatthebeach@gmail.com

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFONRIA

| | |
|---|---|
| TIFFANI GRANT,<br><br>    Plaintiff,<br><br>    v.<br><br>COALINGA STATE HOSPITAL; ALLEN AZIZIAN; LINDSAY CUNNINGHAM; MONICA FELIX; MICHAEL MANBECK; AUDREY KING; JOHN SANDERS<br><br>    Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Tiffani Grant ("Plaintiff" or "Dr. Grant"), by and through her undersigned counsel, Casey Martin of the Martin Law Firm and Christine Levin, Attorney at Law, as and for her Complaint in this action against Coalinga State

---
1
**COMPLAINT AND DEMAND FOR JURY TRIAL**

Hospital; Allen Azizian; Lindsay Cunningham; Monica Felix; Michael Manbeck; Kester; Audrey King; John Sanders ("Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices including Defendants' unlawful search of Dr. Grant in violation of the United States Constitution, Amendment IV pursuant to 42 U.S.C. § 1983, unlawful discrimination, harassment and retaliation against Plaintiff because of her race/color, national origin and/or disabilities, and gender, and because of her repeated complaints about such unlawful discrimination, harassment and retaliation, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").

2. Over the course of Plaintiff's nearly three-year employment history at Defendant Coaling State Hospital ("the Hospital"), Defendants have repeatedly subjected Plaintiff to unlawful discrimination and harassment because of her race/color, national origin and disabilities, as well as to unlawful retaliation. The blatantly hostile work environment at the Hospital includes the frequent use by Plaintiff's co-workers and direct supervisors of derogatory comment.  When a colleagues study materials went missing, Dr. Grant, the only African-American female in the program, was escorted from the hospital to the parking lot.  Her vehicle was searched despite Dr. Grant's providing a receipt demonstrating that she had purchased identical study materials.  On a daily basis, Dr. Grant is addressed as "Miss" or "Tiff" when the male doctors are referred to as "doctor."  During orientation, Dr. Grant was not introduced as a "doctor."  Thereafter, a

comment was made that it would be difficult to remember to refer to her as a "doctor." Comments alleging that clerical jobs are "woman's jobs" are commonplace and tolerated. Psyche technician and shift lead Kester commented that Dr. Grant was too opinionated "for a girl." It was suggested that Dr. Grant straighten her hair in order to earn respect.

3. Dr. Grant made numerous efforts to resolve the situation amicably, but to no avail. After Dr. Grant began escalating her complaints, the Hospital engaged in retaliatory conduct such as refusing to sign off on hours that Dr. Grant had worked.

4. The Defendants' conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to her professional and personal reputation, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under Title VII, Section 1981, and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

///

///

## PARTIES

7. At all relevant times, Dr. Grant has met the definition of an "employee" of the Hospital under all applicable statutes. While performing the duties of a staff psychologist, Dr. Grant served as the leader of a treatment team consisting of a psychologist, psychiatrist, nurse, rehabilitation specialist, social worker and staff to provide a multidisciplinary and holistic approach to patient care. While performing the aforementioned, Dr. Grant was required to have weekly supervision with a licensed psychologist. Plaintiff Tiffani Grant is an African-American female. Additionally, Dr. Grant is 70% disabled as a result of her military service. As such, Dr. Grant is a member of a protected class.

8. Defendant Coalinga Hospital is a secured maximum security forensic hospital which houses sexually violent predators, mentally disordered offenders and prisoners of the California Department of Corrections and Rehabilitation who have mental disorders. The Hospital's principle address is 24511 W. Jayne Avenue, Coalinga, California 93210.

9. Defendant Doctor Allen Azizian was employed by Defendant Coaling State Hospital. During a portion of Dr. Grant's employment, Dr. Azizian served as Dr. Grant's supervisor.

10. Defendant Lindsay Cunningham was employed by Defendant Coaling State Hospital. During a portion of Dr. Grant's employment, Dr. Cunningham served as Dr. Grant's clinical supervisor.

11. Defendant Doctor Monica Felix was employed by Defendant Coaling State Hospital as the one of approximately 50 psychologists working toward her license at Coalinga State Hospital at the pertinent time.

12. Defendant Doctor Michael Manbeck was employed by Defendant Coaling State Hospital.

13. Defendant Audrey King was employed by Defendant Coaling State Hospital as the hospital director at the pertinent time.

14. Defendant John Sanders was employed by Defendant Coaling State Hospital as the Unit Supervisor of Dr. Grant's unit at the pertinent time.

## PROCEDURAL REQUIREMENTS

15. Plaintiff has complied with all statutory prerequisites to filing this action.

16. Dr. Grant endeavored to resolve grievances informally.  On July 7, 2015, Dr. Grant filed grievances with the Coalinga State Hospital.  Although Dr. Grant received some of the requested remedies, the grievances were denied by Defendant Audrey Grant.

17. On or about October 10, 2015, Plaintiff filed a Verified Complaint with the charging Defendant with unlawful discriminatory employment practices based on its unlawful retaliation.

18. On November 25, 2015, the Equal Employment Opportunity Commission issued a Notice of Right to Sue.

19. This action has been filed within 90 days of Plaintiff's receipt of his right-to-sue letters from the EEOC.

20. Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

21. Dr. Grant is a psychologist working toward her license at Coalinga State Hospital.  Dr. Grant is a member of bargaining unit 19.  There are approximately

50 psychologists in the program with similar education and training. Dr. Grant is the only African-American women.

22. During orientation, Dr. Grant was not introduced as a "doctor." Thereafter, a comment was made that it would be difficult to remember to refer to her as a "doctor."

23. On a daily basis, Dr. Grant observes male doctors referred to as "doctor." Dr. Grant has repeatedly objected to being called Miss or Tiff and has repeatedly requested that she be referred to by her correct title - "doctor."

24. Comments that clerical jobs are woman's jobs are frequently made.

25. A supervisor suggested that Dr. Grant would be taken more seriously if she straightened her hair and dressed in a more lady-like fashion. Dr. Grant's hair is naturally kinky. Her hair is clean, neat, and well-kept. Dr. Grant dresses neatly and appropriately for work every day. Like the male doctors, she wears pants. She does not wear high-heels or "lady-like" shoes to work. Dr. Grant works in the Mentally Disordered Offenders Unit, a dangerous environment. Like the male doctors, she must be able to move quickly for her own safety and in order to protect patients.

26. Dr. Grant reported these comments and suggested training be provided to address the unequal manner that she was treated based upon her status as an African-American. Rather than addressing the hospital-wide racist culture, Dr. Manbeck stated that she contact the EEOC. No action was taken in response to her complaints.

27. Mr. Sanders used his physicality in order to convince Dr. Grant to change her position. Mr. Sanders told Dr. Grant she was selfish for thinking only of herself and not her team because she does not have children; therefore, she could not truly understand what it means to be responsible for other people or to have

someone else's well-being in mind.  Mr. Sanders called Dr. Grant inconsiderate, selfish, incapable of being a good leader.  He yelled at her in front of staff and spoke to her in a condescending and disrespectful manner.   Mr. Sanders accused Dr. Grant of cheating her team out of an opportunity to make money.

28. Mr. Sanders harassed Dr. Grant when she disagreed with his opinion on selling her curriculum instead of providing it to the hospital.  Thereafter, Mr. Sanders followed Dr. Grant for several days.  Mr. Sanders even followed Dr. Grant to the bathroom.  On two separate occasions, Dr. Grant specifically requested that Mr. Sanders leave her office; he refused stating he would not leave until she discussed the matter with him.

29. Mr. Sanders told her that she could not push her curriculum; rather, she needed a strong man to push the idea for her.  Mr. Sanders told Dr. Grant that Sacramento would (1) never take her seriously and (2) would walk all over her because of her gender.  Mr. Sanders told her that he should present Dr. Grant's curriculum because he had a "stronger" presence.  Mr. Sanders said that as a man, he would be able to get more money than she would because she is a woman.

30. Each of the above was reported to supervisors.  Initially, Dr. Grant was asked to work it out between herself and Mr. Sanders.  Dr. Grant brought a third party to attend the meeting.  In front of a witness, Mr. Sanders admitted to all of the conduct.  At that point, Mr. Sanders was merely transferred to another unit.

31. Dr. Grant later discovered that Mr. Sanders had previously had similar incidents with another female staff. The situation was the third time Mr. Sanders had been reported for discrimination, investigated, and found to have engaged in discriminatory conduct.  However, he is still a unit supervisor.  The hospital continually moves him from unit to unit as a supervisor instead of demoting or retraining him.

32. On June 16, 2015, Dr. Grant told Dr. Cunningham that Dr. Felix was disrespectful during a presentation given by Dr. Grant.

33. Despite Dr. Cunningham's role as a supervisor, Drs. Cunningham and Felix have a very friendly relationship. In fact, they spend time together outside of work.

34. On June 18, 2015, two days after Dr. Grant complained about Dr. Felix, Dr. Felix made an unfounded accusation that Dr. Grant stole her study materials. The 50 doctors in the program were studying for their board exam and most had identical study materials.

35. On June 18, 2015, Dr. Manbeck told Dr. Grant that Dr. Cunningham was looking for her. Dr. Grant was told that she had been accused of stealing study materials from Dr. Felix and that she was required to submit her vehicle to a search.

36. Dr. Grant immediately denied being a thief. She went to her office and obtained a copy of the receipts for the study materials in her possession and provided the same to Dr. Cunningham.

37. Dr. Cunningham escorted Dr. Grant across the parking lot to her vehicle in front of all of her colleagues. Dr. Grant objected to being searched and asked if Dr. Cunningham had the authority to search her. Dr. Cunningham required Dr. Grant to submit to a search of her vehicle. A review of the study materials by Dr. Cunningham revealed that the materials could not have belonged to Dr. Felix who stated that she was an excessive high-lighter. The books owned by Dr. Grant were in pristine condition.

38. Despite the fact that the materials were not recovered from Dr. Grant, no other employee was singled out and searched.

39. Dr. Grant's contract which explains that "only duly sworn peace officers may conduct searches of persons represented by Unit 19." (Article 15.19 of the BU 19.)

40. Dr. Grant was devastated by the search. For days she could not stop crying. She was unable to sleep. She was too embarrassed to talk to her friends and was unable to make eye contact with anyone from the hospital because she was afraid of what people must have been thinking of her. Dr. Grant also suffered from extreme bouts of rage.

41. Dr. Grant and her union representative Heather Staheli, AFSCME 2620 CFS met with Dr. Allen Azizian on June 23, 2015, in an effort to informally resolve the contact, to minimize contact future contact between Dr. Grant and Drs. Cunningham and Felix, and to prevent conduct.

42. On June 24, 2015, Dr. Grant filed an incident report with the DSH – Coalinga Police Services explaining that her vehicle was searched. Dr. Grant requested the incident be investigated. Rather than investigating the incident, an incident report was generated. The report listed Dr. Grant as both the suspect and the reporting party.

43. Following Dr. Grant's complaints about the search, Dr. Cunningham refused to sign off on Dr. Grant's supervised hours. Dr. Grant first endeavored to resolve the situation with Dr. Azizian on July 3, 2015. When her efforts failed, on July 7, 2015, Plaintiff filed an Employee Contract Grievance regarding an action occurring on June 18, 2015. Dr. Grant requested that Dr. Cunningham cease and desist all searches of BU 19 members, that Dr. Cunningham cease and desist in all direct interactions with Dr. Grant, that Dr. Grant be provided another clinical supervisor, that Dr. Felix be moved to alternate clinical supervision group, and that Dr. Grant be provided verifications of her supervision hours. The Hospital's

Executive Director Defendant Audrey King disputed that the search constituted a "personal search" but acknowledged that the search constituted an error in judgment. Defendant King concluded that since no administrative investigation was initiated regarding the incident, there could be no violation of Dr. Grant's contract.

44. On July 7, 2015, Plaintiff filed a complaint with the Department of State Hospital-Coalinga alleging a violation of Article 17.5 of the Bargaining Unit 19 Collective Bargaining Agreement. The Complaint alleged that during a meeting, Dr. Cunningham asked Dr. Grant to provide falsified logs of supervision in lieu of accurate logs already provided. Although the Complaint was denied, the remedy sought, that another doctor would serve as a liaison in order to verify Dr. Grant's supervised hours.

45. The Hospital agreed that Dr. Cunningham would not provide supervision hours to Dr. Grant. The Hospital further agreed that Dr. Grant would not be required to submit to group supervision with Dr. Felix. Despite these agreements, on at least three occasions, Dr. Grant has been asked to attend supervision with Drs. Cunningham and Felix.

# FIRST CLAIM
# UNLAWFUL DISCRIMINATION BASED ON RACE/ NATIONAL ORIGIN

Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000

(against all defendants except for the DSH – Coalinga Services)

46. Paragraphs 1 through 45 above are hereby incorporated by reference as though fully set forth in this claim.

47. Defendants have unlawfully discriminated against Plaintiff based on her race/national origin (African-American) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-16 et seq. as amended.

48. Plaintiff is a member of a protected group based on his race/national origin (African-American).

49. Defendants treated Plaintiff less favorably than similarly situated employees who are not African-American.

50. Defendant has discriminated against plaintiff in the terms and conditions of her employment on the basis of his protected group status (African-American), in violation of Title VII.

51. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until the Court grants relief.

## SECOND CLAIM
## UNLAWFUL DISCRIMINATION BASED ON RACE/ NATIONAL ORIGIN

Discrimination Based Upon Race in Violation of FEHA

(against all defendants except for the DSH – Coalinga Services)

52. Paragraphs 1 through 51 above are hereby incorporated by reference as though fully set forth in this claim.

53. Defendants discriminated against Plaintiff on the basis of her race in violation of FEHA through numerous illegal acts, including, without limitation, those set forth in this complaint.

54. As a proximate result of the conduct of Defendants, Plaintiff has suffered and will continue to suffer damages in terms of lost wages and other pecuniary loss according to proof. Dr. Grant has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish,

embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Dr. Grant's damages will be ascertained at trial.

55. In committing the foregoing acts, Defendants have been guilty of oppression, fraud and/or malice under California Civil Code section 3294, thereby entitling Dr. Grant to punitive damages in a sum appropriate to punish and make an example out of the foregoing defendants.

56. FEHA provides an award of reasonable attorneys' fees and costs incurred by a prevailing plaintiff in an action brought under its provisions. Dr. Grant has employed and will continue to incur attorneys' fees and costs herein. Dr. Grant is entitled to an award of attorney's fees and costs.

## THIRD CLAIM

## UNLAWFUL DISCRIMINATION BASED ON GENDER

Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000

(against all defendants except for the DSH – Coalinga Services)

57. Paragraphs 1 through 56 above are hereby incorporated by reference as though fully set forth in this claim.

58. During the course of Plaintiff's employment with Defendant, the Defendant, by and through its agents and employees, discriminated against the Plaintiff in the terms, conditions, and privileges of employment in various ways, in substantial part because of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq.

59. The above-described unwelcome sex discrimination created an intimidating, oppressive, hostile and offensive work environment which interfered with Plaintiff's emotional and physical well-being.

60. As a result of the hostile and offensive work environment perpetrated by

Defendant's agents and maintained by the Defendants and Defendants' failure to protect Plaintiff from such discrimination, the Plaintiff suffered humiliation, emotional distress, and physical pain.

## FOURTH CLAIM

Discrimination Based Upon Race in Violation of FEHA

(against all defendants except for the DSH – Coalinga Services)

61. Paragraphs 1 through 60 above are hereby incorporated by reference as though fully set forth in this claim.

62. Defendants discriminated against Plaintiff on the basis of gender in violation of FEHA through numerous illegal acts, including, without limitation, those set forth in this complaint.

63. As a proximate result of the conduct of Defendants, Plaintiff has suffered and will continue to suffer damages in terms of lost wages and other pecuniary loss according to proof. Dr. Grant has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety. The amount of Dr. Grant's damages will be ascertained at trial.

64. In committing the foregoing acts, Defendants have been guilty of oppression, fraud and/or malice under California Civil Code section 3294, thereby entitling Dr. Grant to punitive damages in a sum appropriate to punish and make an example out of the foregoing defendants.

65. FEHA provides an award of reasonable attorneys' fees and costs incurred by a prevailing plaintiff in an action brought under its provisions. Dr. Grant has employed and will continue to incur attorneys' fees and costs herein. Dr. Grant is entitled to an award of attorney's fees and costs.

///

## FIFTH CLAIM

Failure to Prevent Discrimination

(The Hospital)

66. Paragraphs 1 through 65 above are hereby incorporated by reference as though fully set forth in this claim.

67. Defendants through its agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act as described above.

68. Defendants failed to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

69. As a further direct and proximate result of Defendants' violation of Title VII of the Civil Rights Act of 1964 as described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

## SIXTH CLAIM

Warrantless Search Under Color of State Law in Violation of 42 U.S.C. § 1983

(Against Defendant Lindsay Cunningham)

70. Paragraphs 1 through 69 above are hereby incorporated by reference as though fully set forth in this claim.

71. Dr. Cunningham, a supervisor of a state run hospital, by her conduct, as described herein, and acting under color of state law, deprived Dr. Grant of her right to be free from a warrantless search.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

72. Defendant Cunningham is liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under state law of rights secured under the United States Constitution.

73. As a direct and proximate result of Defendants' unlawful actions, Dr. Grant has suffered and will continue to suffer damages including physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## SEVENTH CLAIM

Warrantless Search Under Color of State Law in Violation of 42 U.S.C. § 1983

(Against the Hospital)

74. Paragraphs 1 through 73 above are hereby incorporated by reference as though fully set forth in this claim.

75. When Dr. Cunningham forced Dr. Grant to submit to a search, she was acting as an employee of the state hospital.

76. The search occurred in and during the course and scope her Dr. Cunningham's duties and while she was acting as an employee of the state hospital. Accordingly, the hospital is liable to Dr. Grant under the common law doctrine of respondeat superior.

## EIGHTH CLAIM

Retaliation

(Against the Hospital and Dr. Lindsay)

77. Paragraphs 1 through 76 above are hereby incorporated by reference as though fully set forth in this claim.

78. As herein alleged, the Defendants, by and through its officers, managing agents and/or its supervisors, illegally retaliated against Plaintiff by unjustly subjecting her to unjust scrutiny, refusing to provide appropriate supervision,

refusing to sign off on supervised hours. Defendants had no legitimate reasons for any such act. Each said act of retaliation is in violation of Title VII of the Civil Rights Act of 1964.

79. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, the Defendant may have engaged in other discriminatory practices against her which are not yet fully known. At such time as such discriminatory practices become known, Plaintiff will seek leave of Court to amend this Complaint in that regard.

80. As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain, humiliation and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

81. As a further direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964, as described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with the Defendant and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

82. Plaintiff is informed and believes, and based thereon alleges, that the Defendant's conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of Plaintiff. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from the Defendants in a sum according to proof at trial.

WHEREFORE, plaintiff TIFFANI GRANT, respectfully prays that this Honorable Court grant the following relief:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Issue a permanent injunction:

    a. Requiring defendants to abolish discrimination and reprisal;

    b. Requiring allocation of significant funding and trained staff to implement all changes within two years;

    c. Requiring removal or demotion of all managers who have violated the agency's policies and failed to meet their legal responsibility to promptly investigate complaints or to take effective action to stop and deter prohibited personnel practices against employees;

    d. Establishing and strictly measuring EEO compliance as a critical element in every manager's performance standards;

    e. Creating a process for the prompt investigation of harassment and reprisal complaints separate from the agency's process;

    f. Requiring mandatory and effective training for all employees and managers on discrimination and retaliation issues, investigations and appropriate corrective actions; and,

    g. Eliminating the backlog of current EEO cases alleging discrimination, harassment and reprisal;

2. For an order commanding defendants and each of them to cease and desist from any employment practice which discriminates against plaintiff or others on the basis of race, national origin, disability or in retaliation against the person because he complained about such discrimination;

3. For a permanent injunction against future acts of discrimination and harassment against Plaintiff;

4. For monetary damages, including compensatory damages for plaintiff's emotional distress, past and future and/or impairment of power to earn money;

**COMPLAINT AND DEMAND FOR JURY TRIAL**

5. For an award punitive damages to punish Defendants for their willful, wanton, oppressive, malicious, and/or grossly negligent conduct;

6. For an award of costs of suit including reasonable attorney's fees, including fees under 29 U.S.C. § 216(b) and FEHA;

7. Any and all other relief to which she may be entitled.

Respectfully submitted,

s/Christine J. Levin

Christine J. Levin (# 192181)

4459 N. Teilman Ave.

Fresno, CA 93705